# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# CINCINATTI DIVISION

| | |
|---|---|
| TARA POWELL,<br>c/o Hilton Parker LLC<br>7544 State Ridge Blvd.<br>Reynoldsburg, OH 43068<br><br>        Plaintiff,<br><br>v.<br><br>TRANSUNION RENTAL SCREENING<br>SOLUTIONS, INC.,<br>555 West Adams Street,<br>Chicago, Illinois 60661<br><br>        Defendant. | Civil Case Number:<br>1:23-cv-00264-MWM<br><br>JUDGE: Matthew W. McFarland<br><br>AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff Tara Powell ("Plaintiff") brings this Amended Complaint, seeking statutory and other damages against Transunion Rental Screening Solutions, Inc. ("TURSS") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the

"need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following duty on consumer reporting agencies: consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports.

4. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

5. Defendant has produced and sold consumer reports concerning Plaintiff's background that wrongfully and misleadingly reported Plaintiff's eviction record.

6. As a result of TURSS's wrongful reporting, Plaintiff was damaged by, without limitation, suffering defamatory harm to her reputation, loss of her ability to gain housing, and considerable stress and anguish.

**PARTIES**

7. Plaintiff is a natural person and resident of the State of Ohio and qualifies as a "consumer" as defined and protected by the FCRA.

8. Defendant TURSS is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce.

9. TURSS is a Delaware corporation with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant regularly conducts business within the State of Ohio and violated Plaintiff's rights under the FCRA in the State of Ohio as alleged more fully below.

11. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

**FACTUAL ALLEGATIONS**

12. On or around January of 2023, Plaintiff began applying for housing accommodations.

13. Around this time, Plaintiff applied for housing with Peak Rentals LLC. As part of her application, Plaintiff consented to Peak Rental LLC procuring a consumer report from Defendant regarding herself.

14. On or around January 10, 2023, Plaintiff received notice from Peak Rentals that she was being denied her application due to her consumer background report.

15. To Plaintiff's dismay, she discovered that Defendant TURSS was inaccurately and misleadingly reporting two eviction matters on her report.

16. Defendant TURSS's consumer report listed two eviction matters. The first was case no. 22cv11133 in the Hamilton County Municipal Court. The case had listed one entry or "offense": Action Type: CIVIL NEW FILING; Filing type: NEW SUIT; Filing Date: 6/10/2022.

3

17. Plaintiff was understandably confused as to why this matter was being reported as an active case, as this matter was dismissed by settlement of the parties on August 1, 2022 with damages paid to Plaintiff.

18. The second case listed in Defendant's report was case no. 18cv11921 in the Hamilton County Municipal Court. This case had listed two entries or "offenses". The first read: Action Type: CIVIL NEW FILING; Filing type: NEW SUIT; Filing Date: 05/18/2018. The second entry/"offense" read: Action Type: CIVIL DISMISSAL; Filing type: NEW SUIT; Filing Date: 05/18/2018.

19. Plaintiff was again frustrated and confused, because seemingly this was being reported as two "new suits" filed the same day. Moreover, the limited information was materially misleading as to the circumstances of this matter. Plaintiff was wrongfully evicted from her rent-to-own property by her then landlord, and the case was resolved in settlement with significant restitution and damages paid to Plaintiff.

20. Plaintiff was embarrassed and frustrated, as TURSS's reporting blatantly misrepresented her case history.

21. Not only did these inaccuracies undermine her prior legal efforts against wrongful evictions but was further impeding Plaintiff's current ability to gain reasonable housing.

22. Because of the inaccurate information provided to her potential landlords by Defendant, Plaintiff was denied housing with Peak Rentals LLC.

23. It is patently inaccurate and/or materially misleading to report Plaintiff's eviction cases absent the resolution of settlement and absent additional details that would reflect the "maximum accuracy" of these events. Instead, Defendant willfully reported these events in a

misleading manner that implied Plaintiff had a currently active eviction case against her and another which seemingly reflected a rightful eviction.

24. A simple search of the Hamilton County Court records would have reflected the accurate dispositions of Plaintiff's cases.

25. Upon information and belief, had Defendant not inaccurately and materially misleadingly reported Plaintiff's eviction record on her background report, Plaintiff would not have been precluded from securing housing, and the resulting distress and frustration.

26. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to landlords.

27. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

28. For example, upon information and belief, Defendant allowed inaccurate, incomplete and misleading eviction case information to appear on Plaintiff's consumer report without first confirming the accuracy with the actual court records, which are readily and publicly available.

29. Defendant regularly seeks out and procures court case information with the intention of including it in the consumer reports it sells for profit.

30. Defendant knows or has reason to know the effect of a consumer's eviction record on the assessment of their suitability for housing applications.

31. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own tenant screening products.

32. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

33. Defendant, a sophisticated tenant screening consumer reporting agency, is aware that eviction information is often inaccurate or incomplete.

34. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile consumer background data from various online sources without verifying its accuracy with actual court records.

35. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

36. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

37. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

38. Upon information and belief, Defendant has been sued by consumers under the FCRA in the past for erroneous reporting.

39. Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

40. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

41. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

42. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports.

43. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

44. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

45. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

46. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

47. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

48. Defendant knows that its services are used to make significant consumer decisions.

49. Upon information and belief, Defendant know or should have known that landlords make housing decisions based solely on the information contained in its consumer reports.

50. Upon information and belief, Defendant knew or should have known the negative impact that reporting a consumer's inaccurate, incomplete and/or materially misleading eviction record was likely to have on that consumer's tenant status.

51. Upon information and belief, Defendant purchases public record information from third-party vendors.

52. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

53. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

54. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it procures consumers' information from often provides inaccurate, misleading, and incomplete records.

55. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

56. As a direct result of Defendant's conduct, Plaintiff has been substantially hindered in her ability to gain housing. She has been at least one housing opportunity due to the inaccurate and misleading eviction records on her consumer report.

57. Consequently, Plaintiff wasted her time including attempting to rehabilitate her reputation and correct the errors on the report.

58. As a further direct result of Defendant's inaccurate and/or misleading reporting, Plaintiff has suffered severe mental distress, anxiety and sleepless nights.

8

59. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

60. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

61. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT I
## Violation of the FCRA, 15 U.S.C. § 1681e

62. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

63. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

64. TURSS violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

65. Specifically, TURSS willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately and/or misleadingly reporting Plaintiff's eviction records with an inaccurate and materially case information.

66. TURSS's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

9

67. TURSS is therefore liable to Plaintiff for its willful and/or negligent failures to follow reasonable policies and procedures.

68. As a result of TURSS's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: October 31, 2023

/s/ Jonathan L. Hilton
Jonathan L. Hilton, Esq.
Hilton Parker LLC
7544 State Ridge Blvd.
Reynoldsburg, OH 43068
(614) 992-2277
jhilton@hiltonparker.com
*Attorney for Plaintiff*

Yitzchak Zelman, Esq.
*Pro Hac Vice Motion Forthcoming*

10

                                          MARCUS & ZELMAN, LLC  
                                        701 Cookman Avenue, Suite 300  
                                        Asbury Park, New Jersey 07712  
                                        (732) 695-3282 telephone  
                                        (732) 298-6256 facsimile  
                                        *Attorney for Plaintiff*